# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

|  |  |  |
|---|---|---|
| **CHAD LANGLOIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No.** |
| **v.** | ) | **16-12109-FDS** |
| | ) | |
| **MANUEL PACHECO,** | ) | |
| **THOMAS HODGSON, GLEN TABER,** | ) | |
| **NICHOLAS DRINKWINE, and as of yet** | ) | |
| **unidentified EMPLOYEES OF THE** | ) | |
| **BRISTOL COUNTY SHERIFF'S** | ) | |
| **DEPARTMENT,** | ) | |
| | ) | |
| **Defendants.** | ) | |

_____ )

## MEMORANDUM AND ORDER ON MOTION TO DISMISS

**SAYLOR, J.**

This is a § 1983 civil rights action arising out of an attack against plaintiff Chad Langlois,

then an inmate at the Bristol County House of Corrections, by his cellmate, Manuel Pacheco.

The complaint alleges that the Sheriff of Bristol County, Thomas Hodgson, and two corrections

officers, Nicholas Drinkwine and Glen Taber, acted with deliberate indifference and disregard of

Langlois's health and safety. Specifically, the complaint alleges that defendants failed to protect

Langlois from imminent attack and harm, and that Hodgson failed to train and supervise his

employees. The complaint also alleges claims against an unknown number of unidentified

employees of the Bristol County Sheriff's Department as defendants, although it contains no

specific allegation as to any such employee.

Defendants Hodgson, Drinkwine, and Taber have moved to dismiss the claims against

them pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. In the alternative, they have moved for a more definitive statement under Fed. R. Civ. P. 12(e) as to whether plaintiff exhausted his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). The unidentified employees have also moved to dismiss the claims against them pursuant to Fed. R. Civ. P. 12(b)(6).

For the following reasons, the motion to dismiss of Hodgson, Drinkwine, and Taber will be granted in part and denied in part, and their motion for a more definitive statement will be denied. The motion to dismiss of the unidentified employees will be granted.

I.  **Background**

A.  **Factual Background**

Unless otherwise noted, the facts are set forth as alleged in the complaint.

At all relevant times, Chad Langlois was an inmate at the Bristol County House of Corrections. (Compl. ¶ 7). It appears that he is no longer incarcerated, and that he was not incarcerated at the time that he filed this action.[1]

Thomas Hodgson is the Sheriff of Bristol County. Glen Taber and Nicholas Drinkwine were correctional officers at the Bristol County House of Corrections. (*Id.* at ¶¶ 3-5). The complaint alleges Hodgson and his agents assigned Pacheco to the same room as Langlois, despite Pacheco's history of assaultive behavior. (*Id.* at ¶ 10).

According to the complaint, before the assault, Langlois repeatedly reported to Hodgson, Taber, and Drinkwine, orally and in writing, that Pacheco had a weapon and was plotting to harm him. (*Id.* at ¶¶ 11, 12). The complaint alleges that defendants failed to take appropriate

---

[1] This fact is not in the pleadings, but does not appear to be disputed.

action, neither moving Pacheco or Langlois to a different cell nor searching Pacheco or his cell for a weapon. (*Id.* at ¶ 13).

On October 21, 2013, Pacheco attacked Langlois while he was asleep, stabbing him repeatedly. (*Id.* at ¶ 14). Langlois was taken to Saint Luke's Hospital in New Bedford. As a result of the attack, he suffered numerous lacerations and blood loss, followed by scarring, headaches, loss of sleep, emotional distress, blurred vision, and trauma. (*Id.* at ¶ 15). Following the assault, Pacheco was prosecuted by the Bristol County District Attorney for assault with intent to murder and assault and battery by means of a dangerous weapon. (*Id.* at ¶¶ 17, 18).

### B.      Procedural Background

Langlois filed the present action on October 21, 2016. (Docket No. 1).[2] The complaint asserts six counts: (1) deliberate indifference to an inmate's health or safety in violation of the Fourteenth Amendment (as to Hodgson, Taber, and Drinkwine); (2) reckless and intentional endangerment (as to Hodgson, Taber, and Drinkwine); (3) failure to train and supervise (as to defendant Hodgson); (4) battery (as to Pacheco); (5) deliberate indifference to inmate safety, in violation of the Fourteenth Amendment (it is unclear whether this claim is asserted against Hodgson only or Hodgson, Taber, and Drinkwine); and (6) intentional infliction of emotional distress (as to all defendants). (Compl. ¶¶ 19-57).

On February 8, 2017, defendants Hodgson, Taber, and Drinkwine moved to dismiss the claims against them or, in the alternative, for a more definite statement concerning exhaustion under the PLRA. (Docket No. 7). On March 10, 2017, the unidentified employees filed a

---

[2] Langlois initially filed a substantially similar action on February 12, 2016. *See Langlois v. Hodgson, et al.*, C.A. No. 16:cv-10247-DPW. On June 30, 2016, Hodgson, Drinkwine, and Taber filed substantially similar motions to dismiss and, in the alternative, for a more definite statement. *See id.* Docket No. 10. Langlois voluntarily dismissed the case without prejudice. *See id.* at Docket Nos. 11-13.

motion to dismiss the claims against them.  (Docket No. 12).[3]

## II.      The Motion for a More Definite Statement

Defendants Hodgson, Taber, and Drinkwine have moved for a more definite statement under Fed. R. Civ. P. 12(e) as to plaintiff's exhaustion of administrative remedies under the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e.  For the reasons below, plaintiff is not subject to the PLRA and therefore a more definite statement as to that issue is unnecessary.

A motion for a more definite statement is granted only "[i]f a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading."  Fed. R. Civ. P. 12(e).  "Rule 12(e) motions are disfavored 'in light of the availability of pretrial discovery procedures.'"  *Vizcaino v. Isaac*, 2016 WL 1163652, at *3 (D. Mass. Feb. 2, 2016) (quoting *Cox v. Marine Mar. Acad.*, 122 F.R.D. 115, 116 (D. Me. 1988)).  "The Federal Rules of Civil Procedure 'employ notice pleading, and, for this reason, motions for a more definite statement are not favored.'"  *Id.* (quoting *Delta Educ., Inc. v. Langlois*, 719 F. Supp. 42, 50 (D.N.H. 1989)).

The PLRA requires prisoners to exhaust all available administrative remedies before filing suit under § 1983 or any other federal law.  42 U.S.C. § 1997e(a).  To satisfy the exhaustion requirement, "prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,'. . .—rules that are defined not by the PLRA, but by the prison grievance process itself."  *Jones v. Bock*, 549 U.S. 199, 218 (2007) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)).   Failure to exhaust is an affirmative defense under the PLRA, and inmates are not required to specially plead or demonstrate exhaustion in their

---

[3] Langlois did not file an opposition to that motion.

complaints.  *Id.* at 216.

The PLRA applies only to those who file an action while they are "prisoners," as that term is defined in the PLRA.  *Greig v. Goord*, 169 F.3d 165, 167 (2d Cir. 1999) ("Litigants . . . who file prison condition actions after release from confinement are no longer 'prisoners' for purposes of § 1997e(a) and, therefore, need not satisfy the exhaustion requirements of this provision").  The PLRA defines "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."  42 U.S.C. § 1997e(h).  *See Page v. Torrey*, 201 F.3d 1136, 1139 (9th Cir. 2000) ("[O]nly individuals who, at the time they seek to file their civil actions, are detained as a result of being accused of, convicted of, or sentenced for criminal offenses are 'prisoners' within the definition of 42 U.S.C. § 1997e . . . .").

It appears that Langlois was released from incarceration in 2014.  He filed the current action on October 21, 2016.  (Docket No. 1).[4]  Thus, at the time the complaint was filed, Langlois was not a prisoner and he is therefore not subject to the restrictions of the PLRA.  *See Tomassini v. Corr. Health Servs.*, 2012 WL 1601528, at *2 (D.P.R. May 7, 2012) ("The PLRA's administrative exhaustion requirement is a precondition to suit; therefore, whether it applies depends on the plaintiff's status at the time of filing the [] complaint."); *Rivera Rodríguez v. Pereira Castillo*, 2005 WL 290160, at *5–6 (D.P.R. Jan. 31, 2005) (holding that action filed after juvenile was released from custody was not subject to PLRA exhaustion requirement).  The motion for a more definite statement will therefore be denied.

---

[4] Langlois filed his prior action on February 12, 2016.  *See Langlois*, C.A. No. 16:cv-10247-DPW at Docket No. 1.

### III.   The Motions to Dismiss

#### A.   Standard of Review

On a motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and give plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)).  To survive a motion to dismiss, the complaint must state a claim that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).  Dismissal is appropriate if the facts as alleged do not "possess enough heft to show that plaintiff is entitled to relief."  *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted).

#### B.   Analysis

Defendants Hodgson, Taber, and Drinkwine have moved to dismiss all claims against them pursuant to Rule 12(b)(6).  The unnamed defendants have separately moved to dismiss the claims against them.  For the reasons below, the motion of Hodgson, Taber, and Drinkwine will be granted in part and denied in part, and the motion of the unnamed defendants will be granted.

##### 1.   Defendants Hodgson, Taber, and Drinkwine

It is unclear from the complaint whether it asserts claims against Hodgson, Taber, and Drinkwine in their official capacities or in their individual capacities.  To the extent it asserts claims against them for money damages in their official capacities, such claims are barred.  Suits

against public employees in their official capacities are treated as suits against the public employer, here the Commonwealth of Massachusetts. *See Chute v. City of Cambridge*, 201 F.R.D. 27, 29 (D. Mass. 2001) ("It is well settled that filing a civil action against a city official in that person's official capacity is simply another way of suing the city itself.").

Pursuant to the Eleventh Amendment, the Commonwealth of Massachusetts is immune from suit in federal court unless that immunity has been waived. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993) ("Absent waiver, neither a State nor agencies acting under its control may 'be subject to suit in federal court.'") (quoting *Welch v. Texas Dep't of Highways and Public Transp.*, 483 U.S. 468 (1987)). The Commonwealth has not consented to be sued in federal courts. *Irwin v. Commissioner of Dept. of Youth Services*, 388 Mass. 810, 821 (1983). Claims brought pursuant to § 1983 are separately barred, as the state is not a "person" as defined by that section. *See Brady v. Dill*, 24 F. Supp. 2d 129, 130 (D. Mass 1998) ("42 U.S.C. § 1983 . . . plainly does not apply to states or state agencies.") *rev'd on other grounds*, 187 F.3d 104 (1st Cir. 1999); *Tyler v. Massachusetts*, 981 F. Supp. 2d 92, 95 (D. Mass. 2013) (same). Thus, defendants' motion to dismiss will be granted as to all claims against Hodgson, Taber, and Drinkwine in their official capacities.

a. **Claims for Failure to Protect under Section 1983 (Counts One and Five)**

Count One asserts a claim under 42 U.S.C. § 1983, alleging that defendants violated plaintiff's rights under the Fourteenth Amendments by failing to protect him from harm. Count Five also asserts a claim for the violation of rights under the Fourteenth Amendment, alleging that defendants failed to protect plaintiff from harm. As far as this Court can discern, Counts One and Five assert identical claims. Count Five will therefore be dismissed as duplicative. *See Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 237 (1st Cir. 2013).

Although not entirely clear from the complaint, it appears that Count One intends to allege a violation of rights under the Eighth Amendment, as incorporated into the Fourteenth Amendment.[5]  Under the Eighth Amendment, "'prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners.'"  *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quoting *Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988)).  "However, not every injury suffered by a prisoner at the hands of a fellow inmate gives rise to an Eighth Amendment claim.  In order to state a claim for the violation of Eighth Amendment rights, two requirements must be met."  *Giroux v. Somerset County*, 178 F.3d 28, 32 (1st Cir. 1999).  First, "'the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.'"  *Id.* at 32 (quoting *Farmer*, 511 U.S. at 834).  Given the serious injuries Langlois sustained as a result of the stabbing, there is no real question that the first requirement is met.  Second, "the official involved must have had 'a sufficiently culpable state of mind,' described as 'deliberate indifference' to inmate health or safety."  *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 299 (1991)).  Thus, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious

---

[5] The complaint does not specifically refer to the Eighth Amendment, but alleges that defendants violated plaintiff's rights under the Fourteenth Amendment by failing to "take action to protect the Plaintiff from imminent attack and harm from the violent individual they placed in his cell and thus through deliberate indifference disregarded an excessive risk to the detainees health and safety." (Compl. ¶ 22).  It is well-established that prison officials have a duty under the Eighth Amendment to "protect prisoners from violence at the hands of other prisoners," *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal quotation marks omitted), and that "[a] prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment," *id.* at 828.  It is equally well-established that the Eighth Amendment governs failure-to-protect claims brought by prisoners, while the Fourteenth Amendment Due Process Clause governs the same claims brought by pre-trial detainees (although the standard to be applied in either situation is the same).  *See Burrell v. Hampshire Cnty.*, 307 F.3d 1, 7 (1st Cir. 2002).  The Court will therefore analyze the claim under the rubric of the Eighth Amendment.

harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 839.

The complaint here adequately pleads claims under § 1983 as to defendants Hodgson, Taber, and Drinkwine. It alleges that plaintiff warned defendants, both orally and in writing, that his cellmate had a weapon and was plotting to harm him, and that they intentionally ignored his reports, kept him in the same cell with Pacheco, and refused to search Pacheco or the cell for weapons. (Compl. ¶¶ 11-13, 22-24). Thus, the complaint alleges that defendants Hodgson, Taber, and Drinkwine were aware of a risk of substantial harm, and that they were deliberately indifferent to that risk. *See Pope v. Shafer*, 86 F.3d 90 (7th Cir. 1996) (stating that, in failure to protect cases, "a plaintiff must establish that the official knew of the risk (or a high probability of the risk) and did nothing" and that "[a] prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety") (internal quotation marks omitted) (alteration in original).

Moreover, the reports alleged in the complaint were not of the type that would make it "difficult, if not impossible, for corrections officials to understand the nature of the perceived threat, and as a consequence, the means by which to reduce or eliminate that threat." *See Brown v. Corsini*, 657 F. Supp. 2d 296, 307 (D. Mass. 2009) (internal citations and quotation marks omitted). The complaint alleges that plaintiff reported to defendants Hodgson, Drinkwine, and Taber that his cellmate was plotting to injure him and was in possession of a weapon. (Compl. ¶ 11). The complaint pleads specific facts demonstrating that he expressed more than "generalized fears of violence . . . to alert prison officials or create a need for administrative protection." *See Brown*, 657 F. Supp. 2d at 307.

Therefore, for the purposes of a motion to dismiss, the complaint adequately pleads a cause of action under § 1983 against the individual defendants in their personal capacities.

### i. <u>Qualified Immunity</u>

Taking the facts as alleged in the complaint as true, defendants are not entitled to qualified immunity on the § 1983 claim. The doctrine of qualified immunity protects public employees "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Supreme Court has articulated a two-part test for determining qualified immunity. *Pearson v. Callahan*, 555 U.S. 223 (2009); *see Maldonado v. Fontanes*, 568 F.3d 263, 269 (1st Cir. 2009). The relevant inquiries are (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct. *Id.; Martin v. Marriner*, 904 F.2d 120, 121 (1st Cir. 1990) (government officials retain their right to qualified immunity so long as they "could reasonably have believed that their actions were lawful, given preexisting law and the information that they possessed."). Because qualified immunity does not address the substantive viability of a § 1983 claim, but rather the objective reasonableness of a defendant's actions, a plaintiff who is entitled to prevail on the merits is not necessarily entitled to prevail on the issue of qualified immunity. *Amsden v. Moran*, 904 F.2d 748, 751–52 (1st Cir. 1990); *Rodi v. Ventetuolo*, 941 F.3d 22, 30 (1st Cir. 1991).

As discussed above, the complaint adequately states a claim for the violation of a constitutional right. The only remaining inquiry is whether those rights were clearly established at the time. "A right is 'clearly established' if the contours of the right are sufficiently clear such that 'a reasonable official would understand that what he is doing violates that right.'" *Costa-Urena v. Segarra*, 590 F.3d 18, 29 (1st Cir. 2009) (quoting *Anderson v. Creighton*, 483 U.S. 635,

10

640 (1987).  The right must be defined with specificity, not at a high level of generality based on abstract principles.  *See Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011).  In other words, it must be clearly established that the particular conduct at issue violates the right.  *See id.*  There need not be a prior case directly on point, "but existing precedent must have placed the statutory or constitutional question beyond debate."  *Id.* at 741.  Absent controlling authority, there must be "a robust 'consensus of cases of persuasive authority.'"  *Id.* at 741 (quoting *Wilson v. Layne,* 526 U.S. 603, 617 (1999)).

Both the Supreme Court and First Circuit have held that "deliberate indifference" to a prisoner's safety violates the Eighth Amendment.  *Farmer*, 511 U.S. at 828; *Cortes-Quinones*, 842 F.2d at 561.  More to the point, intentionally ignoring a prisoner's reports of a specific threat has been found to violate the Eighth Amendment.  *See Santiago v. Walls*, 599 F.3d 749, 758 (7th Cir. 2010) (holding that plaintiff stated a claim for failure-to-protect based on his allegation that he submitted a grievance asking that his cellmate be placed on his "enemy list" and that he receive a cell transfer "to prevent a physical confrontation" but warden did not grant cell change) *Scicluna v. Wells*, 345 F.3d 441, 445-46 (6th Cir. 2003) (affirming denial of qualified-immunity defense where plaintiff had warned prison official that another inmate presented a serious threat to his safety but official did not segregate the two).  *Cf. Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 561-62 (1st Cir. 1988) (denying qualified-immunity defense where psychiatrically disturbed prisoner was killed by other inmates shortly after being transferred to grossly overcrowded prison based on prior holdings that failure to respond to actual notice of a prisoner's need for physical protection violates Eighth Amendment).  Accordingly, at this stage in the litigation, defendants are not entitled to qualified immunity and the motion to dismiss Count One will be denied.

### b.    **Failure to Supervise and Train Against Defendant Hodgson (Count Three)**

The complaint also alleges that Hodgson failed to properly train and supervise his employees.  (Compl. ¶ 35).

### (1)    **Failure to Supervise**

Under § 1983, courts have treated claims for both failure to supervise and failure to train under the general category of supervisory liability.  "[T]here is no respondeat superior liability under section 1983."  *Ayala-Rodriguez v. Rullan*, 511 F.3d 232, 236 (1st Cir. 2007) (citing *Rizzo v. Goode*, 423 U.S. 362, 375-77 (1976)).  "Absent evidence of participation, concerted action, or at least culpable knowledge, one officer cannot be held jointly liable under section 1983 for another officer's [unconstitutional conduct]."  *Calvi v. Knox County*, 470 F.3d 422, 429 (1st Cir. 2006).  "Supervisory liability can be grounded on either the supervisor's direct participation in the unconstitutional conduct, or through conduct that amounts to condonation or tacit authorization."  *Whitfield v. Melendez-Rivera*, 431 F.3d 1, 14 (1st Cir. 2005).

Courts "have set forth three elements necessary to establish supervisory liability under § 1983:  (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices, and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff."  *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (collecting cases) (internal quotations omitted).

The complaint fails to plead any of the above three elements.  The complaint is devoid of specific allegations concerning Hodgson's supervision, or lack of it.  The complaint does not

allege that Hodgson had actual or constructive knowledge that his subordinates were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to plaintiff.  The complaint alleges that plaintiff reported the threat of harm to directly to defendant Hodgson, but does not allege that Hodgson was aware that plaintiff had also reported the threat to defendants Taber and Drinkwine or that Hodgson was otherwise aware that Taber and Drinkwine were acting with deliberate indifference to a known risk of serious harm.

Furthermore, the complaint does not allege that any established policy or practice created or engaged in by a supervisor caused or contributed to plaintiff's injuries.  *See Camilo-Robles v. Hoyos*, 151 F.3d 1, 6-7 (1st Cir. 1998) ("[A] supervisor . . . may be liable under section 1983 if he formulates a policy or engages in a practice that leads to a civil rights violation committed by another.").  The complaint does not identify a single policy or practice established by Hodgson, nor does it allege Taber and Drinkwine's alleged deliberate indifference was the result of any policy or practice.

### (2)　　Failure to Train

As a general matter, a policy of inadequate training can serve as a basis for § 1983 liability if the "failure to train 'amounts to deliberate indifference to the rights of persons with whom the [law enforcement officers] come into contact.'"  *Whitfield*, 431 F.3d at 9-10 (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).  "Deliberate indifference" will be found if there is a lack of adequate training "notwithstanding an obvious likelihood that inadequate training will result in the violation of constitutional rights."  *Id.*  The plaintiff must also establish that the deficiency in training actually caused the deliberate indifference to the public's constitutional rights.  *Id.*

Failure-to-train claims are typically brought against municipal defendants or other

entities, not individuals. Nonetheless, "a supervisor may be held individually liable under § 1983 if . . . [a failure to] train the offending employee caused a deprivation of constitutional rights." *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996); *see also Shirback v. Lantz*, 2008 WL 878939, at *4 n.5 (D. Conn. March 28, 2008) ("It appears to the court that the standard for 'deliberate indifference' as an element of a claim for municipal liability [for failure to train or supervise] is the same as the standard for 'deliberate indifference or gross negligence' as an element of a claim of personal liability.").

The complaint—in a most conclusory manner—alleges that Hodgson is responsible for the lack of training of Taber and Hodgson. (Compl. ¶ 35). Beyond that, the complaint does not allege any specific deficiency in training. In *City of Canton*, the Supreme Court emphasized that "the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform." 489 U.S. at 390. In order to assess the adequacy of the training program, *some* allegations concerning the program or its alleged inadequacy are surely required. *See id.* Furthermore, there must be some allegation that the "specific failure in training was at least a partial cause of the ultimate injury." *Whitfield*, 431 F.3d at 9-10. The complaint includes no such allegations, thus fails to state a failure-to-train claim. Count Three will therefore be dismissed.

### c.    <u>State-Law Claims</u>

The complaint also asserts three state-law claims against defendants Hodgson, Drinkwine, and Taber: reckless endangerment, intentional endangerment, and intentional infliction of emotional distress.

Again, it is unclear from the complaint whether it asserts claims against Hodgson, Taber, and Drinkwine in their official capacities or in their individual capacities. To the extent it asserts

claims against them in their official capacities, such claims are barred by sovereign immunity.

Suits against public employees in their official capacities are treated as suits against the public employer, here the Commonwealth of Massachusetts. *See Chute*, 201 F.R.D. at 29 ("It is well settled that filing a civil action against a city official in that person's official capacity is simply another way of suing the city itself.").

Unless waived, Massachusetts is immune from suit in federal court. *See Puerto Rico Aqueduct & Sewer Auth.*, 506 U.S. at 144 ("Absent waiver, neither a State nor agencies acting under its control may 'be subject to suit in federal court.'") (quoting *Welch v. Texas Dep't of Highways and Public Transp.*, 483 U.S. 468 (1987)). Under the Massachusetts Tort Claims Act, Mass. Gen. Laws ch. 258, § 2, the Commonwealth has waived sovereign immunity for certain suits, but only in the Superior Court. Mass. Gen. Laws ch. 258, § 3. The Commonwealth has not consented to be sued in federal courts. Therefore, this Court lacks subject-matter jurisdiction over claims against the Commonwealth of Massachusetts under the Massachusetts Tort Claims Act.

### (1)     Reckless and Intentional Endangerment (Count Two)

To the extent the complaint asserts a claim for "reckless endangerment" against defendants Hodgson, Taber, and Drinkwine in their individual capacities, that claim is also barred by the Massachusetts Tort Claims Act.[6]

---

[6] Defendants also argue that plaintiff's tort claims are barred by common-law immunity. Under common law, "a public official, exercising judgment and discretion, is not liable for negligence or other error in the making of an official decision if the official acted in good faith, without malice, and without corruption." *Nelson v. Salem State Coll.*, 446 Mass. 525, 537 (2006) (citing *Gildea v. Ellershaw*, 363 Mass. 800, 820 (1973)). Massachusetts common law is unclear as to whether public officials are immunized from reckless conduct in the making of an official decision or whether reckless conduct amounts to "other error." *See, e.g., Foster v. McGrail*, 844 F. Supp 16 (D. Mass. 1994) (declining to address whether an intermediate test between malice and negligence would overcome common-law immunity). Even if defendants were immunized from reckless conduct, the complaint adequately pleads at least bad faith and malice.

Under the Massachusetts Tort Claims Act, individual public employees are immune from negligence suits committed within the scope of their office or employment. Mass. Gen. Laws ch. 258, § 2; *Weisman v. Hill*, 629 F. Supp. 2d 106, 113 (D. Mass. 2009) (citing *Jackson v. Town of Milton*, 41 Mass. App. Ct. 908 (1996)). For purposes of Chapter 258, recklessness is considered negligent, rather than intentional, conduct. *See Forbush v. Lynn*, 35 Mass. App. Ct. 696, 699 (1994); *Jackson v. Milton*, 41 Mass. App. Ct. 908, 908–909 (1996). Accordingly, to the extent that the complaint alleges reckless behavior on the part of the defendants, the claims are barred by the statute.

Public employees are not immune, however, from suits predicated on intentional conduct. Mass. Gen. Laws ch. 258 § 10(c) ("The provisions . . . shall not apply to any claim arising out of an intentional tort . . . .). Here, the complaint asserts a claim of intentional endangerment. However, Massachusetts does not recognize a tort of intentional endangerment, and plaintiff may not invent one to circumvent the Massachusetts Tort Claims Act. *See Alves v. Massachusetts State Police*, 90 Mass. App. Ct. 822, 827 n.12 (2017) (plaintiff may not seek to recast the fundamental nature of torts in order to avoid the effect of the Massachusetts Tort Claims Act). The motion to dismiss will therefore be granted as to Count Two.

### (2)  Intentional Infliction of Emotional Distress (Count Six)

Defendants contend that a claim based on intent (such as an intentional infliction of emotional distress claim) requires a showing of *mens rea* greater than what is required for a

---

The complaint alleges that the state-employed defendants intentionally disregarded his reports and warnings, deliberately refused to search his cell for weapons, and refused to separate him and his cellmate. (Compl. ¶¶ 11-13, 22-24, 55). Taking those allegations as true, defendants' actions were "conscious doing[s] of wrong . . . . [B]reach[es] of [] known dut[ies] through . . . ill will," amounting to bad faith. *Spiegel v. Beacon Participations, Inc.*, 297 Mass. 398, 416-417 (1937). Thus, at this stage in the litigation, defendants are not protected by common-law immunity.

claim of deliberate indifference.  They further contend that because plaintiff failed to successfully plead deliberate indifference, he has necessarily also failed to plead facts plausibly suggesting that each individual intentionally allowed plaintiff to be attacked.  However, as explained above, the complaint does adequately plead a claim for failure to protect based on the defendants' alleged deliberate indifference.  Second, the complaint does allege that defendants Hodgson, Taber, and Drinkwine intentionally chose not to take action to protect plaintiff from imminent attack and harm.  (Compl. ¶¶ 22, 55).  The motion to dismiss Count Six will therefore be denied.

### 2.    The Unidentified Employees

The "Unidentified Employees" of the Bristol County Sheriff's Department have also moved to dismiss the claims against them.  The complaint does not include a single allegation concerning any unidentified employee.  The complaint therefore fails to state a claim against any of the unidentified employees upon which relief can be granted, and the motion to dismiss will be granted.  *See Jacobowitz on behalf of MJ v. YMCA of Greater Providence Bayside YMCA Branch*, 2016 WL 1259397, at *2 (D.R.I. Mar. 30, 2016) (dismissing claims against unidentified defendants where the complaint did not make any allegations regarding their conduct).

## IV.    Conclusion

For the foregoing reasons, the motion of Hodgson, Taber, and Drinkwine is GRANTED in part and DENIED in part as follows:

1. The motion for a more definite statement is denied;

2. The motion to dismiss is granted as to Count One (§ 1983) to the extent that it asserts claims against the defendants in their official capacities, but is otherwise denied;

3. The motion to dismiss is granted as to Count Two (reckless and intentional

endangerment);

4. The motion to dismiss is granted as to Count Three (§ 1983 supervisory liability);

5. The motion to dismiss is granted as to Count Five (violation of the Fourteenth

   Amendment);

6. The motion to dismiss is denied as to Count Six (IIED).

The motion to dismiss of the Unidentified Employees of the Bristol County Sheriff's

Department is GRANTED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
Dated: June 19, 2017                    United States District Judge